UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK

_____

In re:

        CORNERSTONE HOMES, INC.,        Bankruptcy Case No. 13-21103-PRW
                                               Chapter 11

                Debtor.

_____

        MICHAEL H. ARNOLD,
        as Chapter 11 Trustee,

                Plaintiff,

           vs.                               Adversary Proceeding No. 15-2030-PRW

        FIRST CITIZENS NATIONAL BANK,
        COMMUNITY PRESERVATION
        CORPORATION, and
        ELMIRA SAVINGS BANK,

                Defendants.

_____

**DECISION AND ORDER
DENYING THE CHAPTER 11 TRUSTEE'S
MOTION FOR SUMMARY JUDGMENT,
GRANTING THE DEFENDANTS'
CROSS-MOTIONS FOR SUMMARY JUDGMENT AND
DISMISSING THE COMPLAINT**

PAUL R. WARREN, United States Bankruptcy Judge

       The Chapter 11 Trustee ("Trustee") has moved for summary judgment in this adversary

proceeding.  The Trustee requests entry of a declaratory judgment on each of the five counts in

the complaint, determining that each of the consolidated notes and mortgages ("Consolidated

Notes and Mortgages") held by First Citizens National Bank ("First Citizens"), Community

Preservation Corporation ("CPC"), and Elmira Savings Bank ("ESB") (collectively,

"Defendants")—in connection with a series of commercial loans made to Cornerstone Homes, Inc. ("Debtor")—are unenforceable as a matter of law (ECF AP No. 14).[1]  If successful, the Trustee's adversary proceeding would result in the transformation of the Defendants' claims from fully secured to unsecured.  Each of the disputed Consolidated Notes and Mortgages served to consolidate numerous notes and mortgages that the Debtor had previously granted to individual "investors"—each of whom executed a written assignment of their mortgage to one of the Defendants.  It appears to be undisputed that each written assignment of mortgage was signed by the actual person named in the assignment—and that person was the holder of the underlying note—and that each assignment included the words "*together with the bond or obligation described in the mortgage*" (*See* ECF AP No. 14, Statement of Undisputed Facts ¶¶ 7, 20, 31, 42, 54; ECF AP No 14, Exhibit C; ECF AP No. 17, Exhibits D & E; ECF AP No. 16, Exhibit A) (emphasis added).  As consideration for the Consolidated Notes and Mortgages, the Defendants separately loaned the Debtor considerable amounts of money to finance the Debtor's real estate business (ECF AP No. 14 ¶¶ 15, 21, 27, 34, 42).  The Trustee argues that, because the individual lenders never indorsed or delivered physical possession of the underlying notes, the assignments of the individual investor mortgages are not valid under New York real property law—rendering the Defendants' Consolidated Notes and Mortgages a nullity (*Id.* ¶ 2).  Relying on the so-called "produce the note" body of law that has evolved in the residential mortgage secondary market setting, the Trustee asserts that the Defendants lack standing to enforce the Consolidated Notes and Mortgages (*See id.* ¶¶ 54, 63-66).

---

[1]  References to the docket for the adversary proceeding are identified as "ECF AP" and references to the docket in the main bankruptcy case are identified as "ECF BK."

The Defendants oppose the legal theory—but not the material facts—set forth in the Trustee's motion for summary judgment (ECF AP Nos. 15, 16, 17, 18, 19). CPC and ESB each filed cross-motions for summary judgment, requesting dismissal of the Trustee's complaint and a declaratory judgment determining that their Consolidated Notes and Mortgages are valid and enforceable (ECF AP Nos. 15, 17).

Because the Defendants obtained written assignments of the individual investor mortgages from the actual individuals with the legal right to assign their rights under both the mortgage and the underlying note—and because the assignments specifically included the phrase "together with the bond or obligation described in the mortgage"—the Consolidated Notes and Mortgages are enforceable, secured, and Defendants have standing to enforce their Consolidated Notes and Mortgages. For that reason, the Trustee's motion for summary judgment, requesting a judgment declaring Defendants' mortgages to be a nullity, is **DENIED**. The Defendants' cross-motions for summary judgment declaring their Consolidated Notes and Mortgages to be valid and enforceable are **GRANTED**. The Trustee's complaint in this adversary proceeding is **DISMISSED**.

# I.

## JURISDICTION

The Court has jurisdiction of this action under 28 U.S.C. §§ 157(a), 157(b)(1) and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(K). This decision constitutes the Court's findings of fact and conclusions of law to the extent required by Rule 7052 FRBP.

Case 2-15-02030-PRW    Doc 28    Filed 12/23/15    Entered 12/23/15 13:04:36    Desc Main
Document    Page 3 of 25

## II.

## QUESTION PRESENTED

The question before the Court is whether, under New York real property law, an assignee under a written assignment of mortgage—executed and delivered by a person with the legal right to assign the mortgage and the note it secures—that includes the words, "together with the bond or obligation described in the mortgage," has standing to enforce the mortgage, despite the absence of indorsement or physical delivery of the underlying note to the assignee. The answer is yes.

## III.

## FINDINGS OF FACT

A.    <u>Procedural History</u>

The Debtor filed a voluntary Chapter 11 case on July 15, 2013 (ECF BK No. 1). The Debtor is a New York corporation that bought, renovated, sold, or rented mostly single family residential real estate in the Southern Tier of New York to high-risk borrowers (ECF AP No. 1 ¶ 4). From 1999 until the appointment of the Chapter 11 Trustee on January 22, 2014 (ECF BK No. 226), the Debtor was owned and operated by David L. Fleet ("Fleet"), who for many years solicited money from hundreds of individual investors in exchange for a promissory note, secured by a mortgage on one of the Debtor's numerous single family[2] homes (ECF AP No. 1 ¶ 4; *see also* ECF BK No. 496 at 1-2). The magnitude of the Debtor's real estate empire is demonstrated by the fact that when the bankruptcy petition was filed, the Debtor owned over 700

---

[2]    Some properties may have been improved by multi-unit homes, but that matters little. The property will be referred to as "single family homes" for convenience.

4

parcels of residential real estate, valued at more than $18,000,000 (ECF BK No. 1, Schedule A).

Eventually, the Debtor's business model changed—or perhaps was forced to change to bear the

weight of servicing "returns" on the debt owed to the individual investors. To that end, the

Debtor eventually sought significant financing from several commercial lenders, including the

Defendants (*See* ECF AP No. 1 ¶¶ 10, 20, 30, 40, 50). To facilitate the financing, the Debtor

encouraged the individual lenders to assign their individual mortgages to one or more of the

Defendants, so that the commercial lenders would loan substantial sums to the Debtor, secured

by Consolidated Mortgages covering numerous parcels of real estate (*See generally* ECF AP No.

1; *see also* ECF BK No. 496 at 1-5). The requested individual mortgage assignments appear to

have been given, and the sought-after commercial loans were made to the Debtor by the

Defendants (*See* ECF AP No. 1 ¶¶ 15, 17, 25, 27, 35, 37, 45, 47, 56, 58).

On motion of the Official Committee of Unsecured Creditors ("Committee") alleging

gross mismanagement of the Debtor by Fleet—and after the Debtor withdrew its opposition to

the motion following two days of trial—the Court appointed the Chapter 11 Trustee on January

22, 2014 (ECF BK No. 226). During the nearly two years since the Trustee's appointment, the

Trustee has operated and managed the Debtor's business (ECF AP No. 14, Arnold Declaration

¶ 1). However, no Chapter 11 plan has yet been proposed. Unsurprisingly, the Securities and

Exchange Commission has filed a complaint against Fleet (*Sec. & Exch. Comm'n v. Fleet*, Case

No. 14-cv-06695-MAT (W.D.N.Y. 2014)).[3] The complaint alleges—among other things—that

Fleet defrauded "more than 300 mostly elderly, unsophisticated investors" by failing to disclose

that the Debtor was relying on loans from banks, to fund repayments on the individuals'

---

[3]     Because docket sheets are a matter of public record, the Court can take judicial notice of
this fact. *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006).

investments—at least those individuals who were fortunate enough to be repaid on their investments (*See id.*). Some might see the Debtor's "business model" as very much resembling a Ponzi scheme—and that comparison has certainly been suggested by the Trustee (*See* ECF BK No. 496).

In June 2015, the Trustee moved to employ counsel to the Committee as the Trustee's "special counsel," to prosecute several claims on behalf of the Estate (ECF BK No. 551). Based on the Trustee's assurance that no conflict existed because "the interests of the [T]rustee and the Committee are fully aligned," the Court granted the Trustee's motion to employ special counsel (*Id.* ¶ 13; ECF AP No. 570). The Trustee filed this adversary proceeding, through special counsel, on August 31, 2015 (ECF AP No. 1).[4] After issue was joined by the Defendants, the Court held a Rule 16 conference with the parties—all of whom agreed that resolution of the legal issue at the heart of the adversary proceeding could be decided by summary judgment, as the underlying facts were not in dispute. The Trustee then filed this motion for summary judgment, seeking a declaratory judgment that the Defendants' Consolidated Mortgages are unenforceable as a matter of law and that the amounts owed by the Debtor to the Defendants under the Consolidated Notes were unsecured, as a result (ECF AP No. 14 ¶¶ 67, 73, 79, 85, 91). In response, ESB filed a cross-motion for summary judgment, requesting dismissal of the Trustee's complaint and a declaration that ESB has standing to enforce its Consolidated Note and Mortgage as a secured creditor (ECF AP No. 15 at 1). Then, First Citizens filed an objection to the Trustee's motion for summary judgment and "cross-move[d]" for dismissal of the complaint

---

[4]    The two-year statute of limitations for the Trustee to bring this adversary proceeding would have expired on July 15, 2015, under 11 U.S.C. § 546(a). Each of the Defendants entered into stipulations with the Trustee, extending the statute of limitations until October 16, 2015 (ECF BK Nos. 587, 588, 590, 591, 620, 629, 642).

6

(ECF AP No. 16 at 1).[5]  Finally, CPC filed a cross-motion for summary judgment in its favor and a declaration that CPC has enforceable and secured liens as a result of its Consolidated Notes and Mortgages (ECF AP Nos. 17 & 19).

## B.   Undisputed Facts

The relevant and material facts are not in dispute—and they are less complex than the volume of submissions might suggest.  Although each of the Defendants entered into unrelated Consolidated Note and Mortgage agreements with the Debtor—under which each of the Defendants loaned the Debtor different amounts of money, secured by mortgages on various parcels of the Debtor's real estate holdings—the facts concerning each transaction that form the basis of the Trustee's complaint are substantially similar.[6]  For the sake of simplicity, the Court will attempt to summarize these unrelated, but similarly structured, commercial real estate transactions.

---

[5]   Procedurally, First Citizens did not cross-move for summary judgment, under Rule 56 FRCP and Rule 7056 FRBP.  First Citizens asks—by way of its objection—that the Court dismiss the complaint with prejudice, without citation to the rule under which First Citizens moves (*See* ECF AP No. 15 at 1 & ¶ 26).  The Court will, however, treat First Citizens' response as a cross-motion for summary judgment.  No prejudice would be worked on the Trustee because identical relief is being sought by ESB and CPC, on common questions of law arising out of substantially similar facts.

[6]   The Court notes that ESB is a successor-in-interest to the original lender in the subject transaction, First Niagara Bank Funding, Inc. ("FNFI"), and differs from the other Defendants in this respect (*See* ECF AP No. 15, Statement of Undisputed Facts ¶ 16).  However, for purposes of the Court's discussion of the undisputed facts, the Court refers to ESB as the lending institution, without prejudice to ESB's rights or remedies as against FNFI or any other party in interest with respect to the transaction.

Before any of the Defendants made commercial loans to the Debtor, the Debtor had already granted mortgages on many of its real estate holdings—consisting of over 700 single family homes—to hundreds of unsuspecting folks who had "invested" in the Debtor's business ("Individual Lender Mortgages") (ECF AP No. 14, Statement of Undisputed Facts ¶¶ 1, 16, 28, 38, 50; *see also* ECF AP No. 14, Exhibit A; ECF BK No. 1, Schedule A).   These Individual Lender Mortgages were granted as security for the Debtor's obligation to repay the individual lenders under promissory notes issued to each individual lender for their "investment" in the Debtor ("Individual Lender Notes") (ECF AP No. 14, Statement of Undisputed Facts ¶¶ 3, 15, 29, 39, 51; *see also* ECF AP No. 14, Exhibit B).   In connection with and to facilitate the financing eventually provided by the Defendants, each individual lender executed and delivered a written "assignment" of their Individual Lender Mortgages to one or more of the Defendants, for consideration (ECF AP No. 14, Statement of Undisputed Facts ¶¶ 7, 20, 31, 42, 54; *see also* ECF AP No. 14, Exhibit C).   There is no dispute that each individual lender had the legal right, under their respective note and mortgage, to transfer or assign the note and mortgage (ECF AP No. 14, Statement of Undisputed Facts ¶¶ 7, 20, 31, 42, 54).   Each individual signed an assignment that included this language:

> [T]he assignor . . . hereby assigns unto [the assignee] . . . a certain mortgage made by Cornerstone Homes, Inc. . . . *together with the bond or obligation described in said mortgage* . . . .

(ECF AP No. 14, Exhibit C; ECF AP No. 17, Exhibits D & E; ECF AP No. 16, Exhibit A) (emphasis added).[7]   The individual lenders neither indorsed the underlying promissory notes nor

---

[7]   The quoted language comes from the sample Assignment of Mortgage that the Trustee attached to the motion for summary judgment and from the sample Assignments of Mortgage provided by CPC and First Citizens as exhibits to their cross-motions (ECF AP No. 14, Exhibit C; ECF AP No. 17, Exhibits D & E; ECF AP No. 16, Exhibit A).   Although the Trustee did not

8

delivered physical possession of their Individual Lender Notes to the Defendants (ECF AP No. 14, Statement of Undisputed Facts ¶¶ 9, 21, 32, 43, 55).

Relying on the written assignments of the Individual Lender Mortgages—"together with the bond or obligation described in said mortgage"—as additional security, the Defendants made sizeable commercial loans to the Debtor, memorialized by Consolidated Notes and Consolidated Mortgages granted by the Debtor (*Id.* ¶¶ 14, 26, 37, 48, 60). These Consolidated Notes and Mortgages purported to consolidate the debt owed on the Individual Lender Notes, which were the subject of the individual lenders' assignments, together with notes evidencing and the mortgages securing the additional financing from the Defendants (*Id.*). The five loan transactions at issue took place during 2006 and 2007, in the following sequence.

First, on April 21, 2006, First Citizens loaned $1,000,000 to the Debtor, the terms of which were set out in a Consolidated Note and Consolidated Mortgage between the Debtor (as borrower/mortgagor) and First Citizens (as lender/mortgagee) (*Id.* ¶ 11; ECF AP No. 1, Exhibits B & C). The consolidation agreement also served to consolidate certain of the Individual Lender Mortgages on 23 specific parcels of real estate (ECF AP No. 15 at 2; ECF AP No. 1, Exhibits B

---

attach each individual assignment as an exhibit to the motion—presumably because of the burden and cost of doing so—the Court assumes for purposes of this motion for summary judgment that the language of each assignment is substantially similar. The Trustee has not suggested that the language of any of the individual Assignments of Mortgage differs in any meaningful respect—or does not include the language "together with the bond or obligation described in said mortgage." The Trustee has been in the exclusive possession and control of the Debtor's books and records during the two years that he has operated the Debtor. If the Trustee had a factual basis to argue that the language of the individual lender assignments did not include the words "together with the bond or obligation described in said mortgage," the Trustee has waived that claim at this point in the litigation. The Court concludes, based on the record, that the Trustee's sample Assignment of Mortgage is fairly representative of the assignments executed by each of the individual investors.

9

& C). Each of the individual lenders holding a note secured by a mortgage on the affected parcels executed and delivered to First Citizens an Assignment of Mortgage, that included the words "together with the bond or obligation described in said mortgage" (ECF AP No. 14, Exhibit C; ECF AP No. 17, Exhibits D & E; ECF AP No. 16, Exhibit A).

Then, on August 22, 2006, CPC loaned $4,000,000 to the Debtor, the terms of which were set out in a Consolidated Note and Consolidated Mortgage between the mortgagor-Debtor and CPC (ECF AP No. 14, Statement of Undisputed Facts ¶ 34; ECF AP No. 1, Exhibits I & J). The consolidation agreement also served to consolidate certain of the Individual Lender Notes and Mortgages on 103 specific parcels of real estate (ECF AP No. 1, Exhibits I & J). Each of the individual lenders holding a note secured by a mortgage on the affected parcels executed and delivered to CPC an Assignment of Mortgage, that included the words "together with the bond or obligation described in said mortgage" (ECF AP No. 14, Exhibit C; ECF AP No. 17, Exhibits D & E; ECF AP No. 16, Exhibit A).

Next, but also on August 22, 2006, CPC loaned an additional $4,800,000 to the Debtor, the terms of which were spelled out in a Consolidated Note and Consolidated Mortgage between the mortgagor-Debtor and CPC (ECF AP No. 14, Statement of Undisputed Facts ¶ 45; ECF AP No. 1, Exhibits L & M). The consolidation agreement also served to consolidate certain of the Individual Lender Notes and Mortgages on 111 specific parcels of real estate (ECF AP No. 1, Exhibits L & M). Each of the individual lenders holding a note secured by a mortgage on the affected parcels executed and delivered to CPC an Assignment of Mortgage, that included the words "together with the bond or obligation described in said mortgage" (ECF AP No. 14, Exhibit C; ECF AP No. 17, Exhibits D & E; ECF AP No. 16, Exhibit A).

And then, on December 21, 2006, First Citizens loaned an additional $2,479,050 to the Debtor, the terms of which were set out in a Consolidated Note and Consolidated Mortgage between the mortgagor-Debtor and First Citizens (ECF AP No. 14, Statement of Undisputed Facts ¶ 23; ECF AP No. 1, Exhibits E & F). The consolidation agreement also served to consolidate certain of the Individual Lender Notes and Mortgages on 59 specific parcels of real estate (ECF AP No. 1, Exhibits E & F). Each of the individual lenders holding a note secured by a mortgage on the affected parcels executed and delivered to First Citizens an Assignment of Mortgage, that included the words "together with the bond or obligation described in said mortgage" (ECF AP No. 14, Exhibit C; ECF AP No. 17, Exhibits D & E; ECF AP No. 16, Exhibit A).

And finally, on July 31, 2007, ESB loaned $1,267,500 to the Debtor, the terms of which were set out in a Consolidated Note and Consolidated Mortgage between the mortgagor-Debtor and ESB (ECF AP No. 14, Statement of Undisputed Facts ¶ 57; ECF AP No. 1, Exhibits O & P). The consolidation agreement also served to consolidate certain of the Individual Lender Notes and Mortgages on 28 specific parcels of real estate (ECF AP No. 1, Exhibits O & P). Each of the individual lenders holding a note secured by a mortgage on the affected parcels executed and delivered to ESB an Assignment of Mortgage, that included the words "together with the bond or obligation described in said mortgage" (ECF AP No. 14, Exhibit C; ECF AP No. 17, Exhibits D & E; ECF AP No. 16, Exhibit A).

When all was said and done, the Defendants had loaned a total of $13,546,550 to the Debtor, evidenced by Consolidated Notes secured by Consolidated Mortgages on 324 parcels of the Debtor's real estate scattered throughout the Southern Tier of Western New York.

11

The Trustee now seeks a declaratory judgment that the Defendants' Consolidated Notes and Consolidated Mortgages are unenforceable as a matter of law, based on the Trustee's claim that the assignment of the underlying Individual Lender Mortgages was legally ineffective (ECF AP No. 1). A ruling in the Trustee's favor would transform the Defendants' claims from "secured" to "unsecured"—resulting in some distribution to perhaps hundreds of individual unsecured creditors who would otherwise not be likely to receive a distribution in this case. Of course, the Defendants seek exactly the opposite result—a judgment dismissing the Trustee's complaint and leaving undisturbed their secured positions.

## IV.

## ARGUMENTS

The Trustee's motion for summary judgment is based on a fundamental tenet of real estate law: "a transfer of the mortgage without the debt is a nullity, and no interest is acquired by it." (ECF AP No. 14 ¶ 51 (quoting *Merritt v. Bartholick*, 36 N.Y. 44, 45 (1867)). The Trustee argues that a mortgagee must be able to demonstrate that it has standing to enforce both the mortgage *and* the underlying note (*Id.* ¶ 53). As applied to the facts of this case, the Trustee argues that the Defendants must demonstrate that they are entitled to enforce the underlying Individual Lender Notes as "holders" of those notes, in order for the Defendants' Consolidated Notes and Mortgages to be valid and enforceable secured claims (*Id.* ¶¶ 54, 63-66). The Trustee contends that because the Individual Lender Notes are negotiable instruments, under Article 3 of the New York UCC ("NYUCC"), the Individual Lender Notes could only be negotiated to the Defendants by indorsement and physical delivery (*Id.* ¶¶ 55-58 (citing NYUCC § 3-202(1)). The Trustee argues that the individual lenders' mere written assignment of the mortgages, even

12

though those assignments included the words "together with the bond[s] or obligation[s] described in said mortgage[s]," were nullities as a matter of law (*Id.* ¶ 62; ECF AP No. 14, Exhibit C). The Trustee does not claim that the signatures of the individual lenders on the assignments were forgeries, or that the individuals lacked the legal right to transfer their notes and mortgages, or that any shenanigans were afoot in the execution and delivery of the assignments. The Trustee simply argues that the assignments of mortgage instruments, without indorsement and physical delivery of the underlying investor notes, fail as a matter of law.

The Trustee asks this Court to join him in disagreeing with a long line of New York cases that—as the Trustee sees it—"misstate" the correct rule of law in holding that "[e]*ither a written assignment* of the underlying note or physical delivery of the note" validly transfers the note (ECF AP No. 14 ¶¶ 59-61 (citing and criticizing *U.S. Bank, N.A. v. Collymore*, 68 A.D.3d 752, 754 (2d Dep't 2009); *GRP Loan, LLC v. Taylor*, 95 A.D.3d 1172, 1173 (2d Dep't 2012)). The Trustee argues that this line of cases follows a rule that conflicts with the requirements for negotiation under Article 3 NYUCC and can be traced back to a single "infirmed"—in the Trustee's view—decision, *U.S. Bank, N.A. v. Collymore*, 68 A.D.3d 752 (2d Dep't 2009) (ECF AP No. 14 ¶ 60-61). Although the *Collymore* decision remains good law—and has been followed in dozens of opinions by the state and federal courts in New York—the Trustee asks this Court to reject *Collymore* and its progeny, as being at odds with Article 3 NYUCC (*See id.*).

ESB and CPC contend that the language of the written assignment of the Individual Lender Mortgages was sufficient to also transfer the Individual Lender Notes (ECF AP No. 15, Mem. of Law at 7-8; ECF AP No. 19 at 9-10). ESB argues that under New York Real Property Law §§ 254(9), 275, 278—among other general principles of New York real property law—a party may properly transfer a note and mortgage by way of an assignment (ECF AP No. 15,

13

Mem. of Law at 6-10). Both ESB and CPC point to numerous New York cases that have followed the rule recognized by *Collymore*, that either a written assignment or physical possession of a note is a valid method of transfer (*Id.* at 21-23; ECF AP No. 19 at 14-15). CPC further observes that the language in each written assignment specifically references the underlying Individual Lender Notes by stating both the mortgage and the "bond or obligation described in said mortgage" are being assigned (ECF AP No. 19 at 10).

First Citizens, on the other hand, emphasizes that the real question is whether First Citizens has standing to enforce the *Consolidated Notes and Mortgages*—not whether it is entitled to enforce the Individual Lender Notes and Mortgages (ECF AP No. 16 ¶¶ 6-15). First Citizens argues that because it is indisputably a holder of the Consolidated Notes and Mortgages, under NYUCC § 3-104, it is entitled to enforce its Consolidated Notes and Mortgages (*Id.* ¶ 8-10).

Additionally, both First Citizens and CPC question the Trustee's reliance on the body of law that has evolved in the context of consumer-residential mortgage lending, in response to the problems surrounding assignments made in the secondary market by way of the Mortgage Electronic Recording System ("MERS") (*Id.* ¶¶ 17-21; ECF AP No. 19 at 8-9, 11-12). In the consumer-mortgage setting, the Defendants argue, the requirement of indorsement and delivery of possession of the underlying note serves to protect the consumer-borrower from the risk of paying the wrong party—particularly in light of the now notoriously questionable mortgage assignment practices, through MERS, of foreclosing secondary market lenders (ECF AP No. 16 ¶ 21). Here, by contrast, First Citizens asserts that there is no question that the Debtor—as borrower—was obligated to repay the Defendants—as lenders (*Id.*). CPC further emphasizes that the residential mortgage cases do not involve an independent and new note executed by the

14

borrower and delivered to the lender—together with the assignment and consolidation of preexisting notes and mortgages—as here (ECF AP No. 19 at 8-9).

Finally, First Citizens and CPC argue that, at the very least, they have secured claims as to the "new gap financing" that they provided to the Debtor—which gap financing is included in their Consolidated Notes and Mortgages (ECF AP No. 16 ¶ 20; ECF AP No. 19 at 17-18). The Defendants argue that these gap notes and mortgages evidence new debt incurred by the Debtor that is owed to them, in addition to the debt evidenced by the assigned and consolidated Individual Lender Mortgages (ECF AP No. 19 at 18).[8] The Trustee asks the Court to refrain from ruling on the gap financing issue at this point in the litigation (ECF AP No. 21 ¶¶ 21-22).

## V.

## CONCLUSIONS OF LAW

### A.   Summary Judgment Standard

The Trustee moves for summary judgment, requesting a judgment declaring the Defendants' mortgages a nullity. ESB and CPC cross-move for summary judgment, requesting a judgment dismissing the Trustee's complaint on the merits.[9] The motion and cross-motions are brought under Rule 56 of the Federal Rules of Civil Procedure ("FRCP") and Rule 7056 of the

---

[8]    First Citizens states that its first loan contains $189,307.70 of gap financing, and its second loan contains $688,975.69 of gap financing (ECF AP No. 16 at 9 n.7). CPC states that its first loan contains $733,956.47 of gap financing, and its second loan contains $893,981.69 of gap financing (ECF AP No. 19 at 17-18).

[9]    As mentioned earlier, while First Citizens has not designated its opposition as a cross-motion for summary judgment, it unquestionably seeks dismissal of the Trustee's complaint on the merits. Because ESB and CPC have cross-moved for summary judgment, the ambiguous procedural posture of First Citizens "opposition" is of no practical consequence.

15

Federal Rules of Bankruptcy Procedure ("FRBP"). Rule 56 FRCP provides that a court may grant summary judgment only if there is "no genuine issue as to any material fact, and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The movant bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "[T]he movant must make a *prima facie* showing that the standard for obtaining summary judgment has been satisfied." 11 *Moore's Federal Practice* § 56.11[1][a] (Matthew Bender 3d ed.). An issue of material fact is genuine where "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

Once the moving party has met its initial burden, the burden then shifts to the non-moving party to demonstrate that, as to a material fact, a genuine issue exists. *Id.* at 250. The non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Rather, the non-movant must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (internal quotation marks omitted). To defeat a motion for summary judgment, "[t]he mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmonvant]." *Anderson*, 477 U.S. at 252. The court must view underlying facts contained in affidavits, attached exhibits, and depositions in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.,* 369 U.S. 654, 655 (1962). Moreover, the court must draw all reasonable inferences and resolve all ambiguities in favor of the non-moving party. *Anderson*, 477 U.S. at 248-49. In deciding a motion for summary judgment, the court must determine whether "the evidence presents a sufficient disagreement to require submission to a jury or

16

whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

Here, the Court finds that there is no genuine issue as to the material facts, as most—if not all—of the material facts were stipulated as being uncontested by the parties (*See* ECF AP No. 14, Statement of Undisputed Facts; ECF AP No. 15, Statement of Undisputed Facts; ECF AP No. 18, Statement of Undisputed Facts). Because there are no genuine issues of material fact, the Court can determine whether judgment should be granted as a matter of law.


**B.** **Declaratory Judgment Standard**

The Trustee, ESB, and CPC—and in a roundabout way First Citizens—all seek a declaratory judgment in their favor. The Declaratory Judgment Act, 28 U.S.C. § 2201, provides that, in a case of actual controversy within its jurisdiction, a court, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. 28 U.S.C. § 2201; Rule 57 FRCP. Declaratory judgment may be granted where the facts establish "a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *State Farm Mut. Auto. Ins. Co. v. Rabiner*, 749 F. Supp. 2d 94, 102 (E.D.N.Y. 2010) (citing *Niagara Mohawk Power Corp. v. Tonawanda Band of Seneca Indians*, 94 F.3d 747, 752 (2d Cir. 1996)); *see also Olin Corp. v. Consol. Aluminum Corp.*, 5 F.3d 10, 17 (2d Cir. 1993) (*quoting Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1991)). Where the case presents an "actual controversy," courts have broad discretion to grant or deny declaratory relief. *Dow Jones & Co. v. Harrods, Ltd.*, 237 F. Supp. 2d 394, 431 (S.D.N.Y. 2002) (citing *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288

(1995)). In determining whether to issue a declaratory judgment, courts consider whether the judgment would serve a useful purpose in clarifying or settling the legal issues involved, and whether a judgment would finalize the controversy and offer relief from uncertainty. *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 389 (2d Cir. 2005) (citing *Broadview Chem. Corp. v. Loctite Corp.*, 417 F.2d 998, 1001 (2d Cir. 1969)).

Here, the issuance of a declaratory judgment concerning the status of Defendants' mortgages—as either valid or invalid—would finalize the controversy at the heart of the Trustee's adversary proceeding. There is no question that a substantial controversy exists between the parties—with mortgages totaling over $13,000,000 hanging in the balance. The dispute before the Court is particularly well-suited to resolution by the issuance of a declaratory judgment, to resolve the question concerning the status of the Defendants' mortgages.

### C. Standing to Enforce a Note Can Be Established by Written Assignment of the Note by an Assignor with Legal Rights Under the Note.

The issue for the Court to resolve, stated most simply, is whether the Defendants have standing to enforce their mortgages in a mortgage foreclosure action. "State law governs the determination of property rights in a bankruptcy proceeding." *In re Idicula*, 484 B.R. 284, 288 (Bankr. S.D.N.Y. 2013) (citing *Butner v. United States*, 440 U.S. 48 (1979) and *In re Morton*, 866 F.2d 561, 563 (2d Cir. 1989)). Here, the parties agree that New York law controls the issue of standing to enforce a mortgage. Not surprisingly, the New York cases discussing standing to enforce a mortgage typically take place in the context of a foreclosure action. *See, e.g.*, *Aurora Loan Servs., LLC v. Weisblum,* 85 A.D.3d 95, 108-09 (2d Dep't 2011); *Bank of N.Y. v. Silverberg*, 86 A.D.3d 274, 280 (2d Dep't 2011); *Citimortgage, Inc. v. Stosel*, 89 A.D.3d 887,

18

888 (2d Dep't 2011); *U.S. Bank, N.A. v. Collymore*, 68 A.D.3d 752, 754 (2d Dep't 2009). To establish standing to foreclose a mortgage, the mortgagee must demonstrate the right to enforce both the subject mortgage *and* the underlying note. *See U.S. Bank v. Dellarmo*, 94 A.D.3d 746, 748 (2d Dep't 2012); *Silverberg*, 86 A.D.3d at 279-80. "[S]ince a mortgage is merely security for a debt, it cannot exist independently of the debt, and thus, a transfer or assignment of only the mortgage without the debt is a nullity and no interest is acquired by it." *Dellarmo*, 94 A.D.3d at 748; *see also Merritt v. Bartholick*, 36 N.Y. 44, 45 (1867) (frequently cited for establishing the proposition that "a transfer of the mortgage without the debt is a nullity, and no interest is acquired by it").

The Trustee contends that in order to enforce the Individual Lender Notes and Individual Lender Mortgages—and by extension, the Defendants' Consolidated Notes and Consolidated Mortgages—the Defendants must be "holders" of the Individual Lender Notes as defined by NYUCC § 1-201 (ECF AP No. 14 ¶¶ 63-66). Because notes are negotiable instruments, the Trustee asserts that the Individual Lender Notes could *only* have been acquired by the Defendants—making them "holders"—by indorsement and physical delivery of the notes, under NYUCC § 3-202(1) (*Id.* ¶¶ 56-58). As the Trustee sees it, the written *assignment* of the Individual Lender Notes was not a valid manner by which the Defendants could acquire ownership of those Individual Lender Notes, rendering Defendants' Consolidated Notes and Consolidated Mortgages a nullity (*See id.*).

The Trustee's formulaic application of the NYUCC is not supported by the case law regarding standing to foreclose a mortgage. The majority—and it is a substantial majority— position of both federal and state courts applying New York law is that "[a] plaintiff has standing to bring a mortgage foreclosure action 'where it is both the holder *or assignee* of the subject

19

mortgage and the holder *or assignee* of the underlying note at the time the action is commenced.'" *1077 Madison St., LLC v. Smith*, No. 13-CV-7182 (DLI), 2015 U.S. Dist. LEXIS 135025, at *15 (E.D.N.Y. Aug. 27, 2015), *aff'd*, 2015 U.S. Dist. LEXIS 134173 (E.D.N.Y. Sept. 30, 2015) (emphasis added) (quoting *Collymore*, 68 A.D.3d at 753); *Wells Fargo, N.A. v. Landi*, No. 13-CV-5822, 2015 U.S. Dist. LEXIS 127786, at *8 (E.D.N.Y. Aug. 14, 2015) (same); *U.S. Bank v. Squadron VCD, LLC*, No. 10 CV 5484 (VB), 2011 U.S. Dist. LEXIS 114580, at *19 (S.D.N.Y. Oct. 3, 2011) (same); *Greystone Bank v. Skyline Woods Realty, LLC*, 817 F. Supp. 2d 57, 63 (N.D.N.Y. 2011) (same); *In re Idicula*, 484 B.R. 284, 288 (Bankr. S.D.N.Y. 2013) (same); *In re Lippold*, 457 B.R. 293, 296-97 (Bankr. S.D.N.Y. 2011) (same); *Nationstar Mortg., LLC v. Catizone*, 127 A.D.3d 1151, 1152 (2d Dep't 2015) (same); *Bank of America, N.A. v. Kyle*, 129 A.D.3d 1168, 1168-69 (3d Dep't 2015) (same); *Homecomings Fin., LLC v. Guldi*, 108 A.D.3d 506, 507-08 (2d Dep't 2013) (same); *One Bank of N.Y. v. Silverberg*, 86 A.D.3d 274, 279 (2d Dep't 2011) (same); *Citimortgage, Inc. v. Stosel*, 89 A.D.3d 887, 888 (2d Dep't 2011) (same).[10] Further, "[e]*ither* a written assignment of the underlying note or the physical delivery of the note prior to the commencement of the foreclosure action is sufficient to transfer the obligation." *1077 Madison Street,* 2015 U.S. Dist. LEXIS 135025, at *15; *Landi*, 2015 U.S. Dist. LEXIS 127786, at *8; *Squadron*, 2011 U.S. Dist. LEXIS 114580, at *19; *Idicula*, 484 B.R. at 288; *Lippold*, 457 B.R. at 297; *Kyle*, 129 A.D.3d at 1169; *Guldi*, 108 A.D.3d at 508; *Silverberg*, 86 A.D.3d at 279; *Stosel*, 89 A.D.3d at 888; *Collymore*, 68 A.D.3d at 754; *see also In re Verna*, No. 14-201821, 2015 Bankr. LEXIS 3012, at *17 n.10 (Bankr. N.D.N.Y. Sept. 4, 2015).

It is critical to emphasize that—here—there is no dispute about the fact that the individual lenders actually signed each Assignment of Mortgage—or that each assignment

_____

[10]     The cases that support this position are so numerous that it is not practical to list them all.

20

included the words "together with the bond or obligation described in the mortgage" (ECF AP No. 14, Statement of Undisputed Facts ¶¶ 7, 20, 31, 42, 54; *see* ECF AP No. 14, Exhibit C; ECF AP No. 17, Exhibits D & E; ECF AP No. 16, Exhibit A).   There is no dispute that those individual lenders could legally assign their notes and mortgages.   The individual lenders had legal rights with respect to both their Individual Lender Notes and Individual Lender Mortgages, including the right to assign the notes by "written instrument or physical delivery."   *See Idicula*, 484 B.R. at 288 (where the assignment failed because it was made by MERS, but MERS held only legal rights under the mortgage; MERS had no legal rights under the note); *see also 1077 Madison Street*, 2015 U.S. Dist. LEXIS 135025, at *15-17 (analyzing a chain of assignments and finding that, for a written assignment of a mortgage to be effective, it must "contain language unambiguously assigning the underlying debt" and must be granted by the holder of the note). Contrary to the Trustee's view, the written assignment of a mortgage, including language unambiguously assigning the underlying debt and made by an assignor/holder with legal rights under the note, does confer standing on the assignee to enforce the mortgage under New York law.   To the extent that the Trustee invites this Court to reject *Collymore*—and the over one hundred decisions[11] that have followed *Collymore* as good law—that invitation is declined.

According to the Trustee, "[a]t least two courts have recognized the incongruity between the negotiation of a note under Article 3 *and the misstatement of law* set forth [in *Collymore* and its progeny]"—citing *Bank of New York Mellon v. Deane*, 970 N.Y.S.2d 427, 430 (N.Y. Sup. Ct.

---

[11]      The Court's own research indicates that at least 126 decisions have cited *Collymore* favorably.   Of these, the Court found at least 63 decisions that directly quote the *Collymore* language that "[e]*ither* a written assignment of the underlying note or physical delivery of the note" is sufficient—provided of course that the assignment contains language unambiguously assigning the underlying debt and it is signed by the note holder.   *See 1077 Madison Street*, 2015 U.S. Dist. LEXIS 135025, at *15-17.

Kings Cnty. 2013) and *HSH Nordbank AG v. Barclays Bank PLC*, 986 N.Y.S.2d 866 (N.Y. Sup. Ct. N.Y. Cnty. 2014) (ECF AP No. 14 ¶ 60) (emphasis added). However, neither decision served to overrule *Collymore*—as they were issued by lower courts—nor did they hold that an assignee was *not* entitled to enforce a note and mortgage by reason of a written assignment. *See Deane*, 970 N.Y.S.2d at 433-34 (discussing the common confusion between the terms "holder" and "assignee" and stating that "[w]hatever the rights of a person to enforce an instrument by reason of . . . assignment, a person is not a 'holder' by reason of . . . assignment alone"). In any event, the Court is not inclined to stray from the overwhelming weight of authority supporting the rule as articulated by *Collymore*, based on the two trial court decisions cited by the Trustee. The Court holds that standing to enforce a mortgage can be established by evidence of a written assignment of the mortgage, where that assignment includes language unambiguously assigning the underlying debt, from an assignor with legal rights as a holder under the note itself—in this case, the individual note holders.

Importantly, in order to assign the right to enforce both the mortgage and the note, the written assignment must specifically reference the mortgage and the underlying debt or obligation. *See 1077 Madison Street,* 2015 U.S. Dist. LEXIS 135025, at *15-16. "Assignment of the mortgage without the note it secures is insufficient to provide the assignee with standing to foreclose." *Id.* (citing *Knox v. Countrywide Bank*, 4 F. Supp. 3d 499, 508 (E.D.N.Y. 2014) and *Silverberg*, 86 A.D.3d at 280). Thus, in *1077 Madison Street*, the court found that there would be a valid and enforceable chain of assignment where the instrument assigned the mortgage "together with the bond(s) or obligation(s) described in said mortgage," and an invalid chain of assignment where the instrument merely assigned the mortgage and was silent as to the underlying debt. *See id.*

22

Here, there is no dispute that the individual investors—who were the lawful owners and holders of the Individual Lender Notes and Mortgages—executed and delivered to Defendants written assignments of their Individual Lender Mortgages, "*together with the bond or obligation described in the mortgage*" (*See* ECF AP No. 14, Statement of Undisputed Facts ¶¶ 7, 20, 31, 42, 54; ECF AP No. 14, Exhibit C; ECF AP No. 17, Exhibits D & E; ECF AP No. 16, Exhibit A).[12] The Trustee has not suggested or provided evidence that any of the written assignments were missing this language. Tellingly, the language in the challenged assignments directly mirrors the language statutorily prescribed by the New York Legislature to be used in an Assignment of Mortgage. *See* N.Y. Real Property Law § 258, Schedule O. The New York mortgage assignment form's statutorily recommended language—and the language in the challenged assignments in this case—is unambiguous in its reference to the underlying debt.

Additionally, unlike the cases cited by the Trustee involving mortgages assigned to MERS—where the assignment failed because the assignor never received legal rights in the underlying note—the assignments to the Defendants expressly included the underlying "bond or other obligation described in the mortgage" *and were made by the holders of the notes*. *See Lippold*, 457 B.R. at 296-97 (holding that U.S. Bank—the assignee under an assignment that purported to transfer both the mortgage and the note—did not have standing to foreclose on the property because MERS—the assignor—did not have the legal right to assign the underlying note, where there was no evidence that MERS was a party to the note or "was authorized to take any action with respect to the Note"); *see also Idicula*, 484 B.R. at 288-89 (holding that U.S. Bank—which contended that it had rights in the note based on an allonge—lacked standing to

---

[12]     The term "bond" is defined as "a written promise to pay a fixed sum of money, at a definite time, with stated interest." Black's Law Dictionary 211 (10th ed.).

23

foreclose on the mortgage because it never produced evidence of the allonge, physical delivery of the note, or assignment of the note by a written instrument); *HSBC Bank USA, N.A. v. Thomas*, 46 Misc. 3d 429, 433-34 (N.Y. Sup. Ct. Kings Cnty. 2014) (denying summary judgment as to standing where HSBC Bank was the assignee under a written assignment of the mortgage, but questions of fact remained as to whether MERS negotiated or transferred the note to HSBC Bank before the foreclosure); *Aurora Loan Servs.*, 85 A.D.3d at 108-10 (holding that Aurora Loan Services—as assignee—lacked standing to foreclose where there was no evidence that MERS—as assignor—"initially physically possessed the note or had the authority from the lender to assign it"). These cases are distinguishable from the facts here, where no party questions the rights of the individual investors to transfer their interest in the underlying Individual Lender Notes and where the assignments of mortgage unambiguously assigned the underlying debt.[13]

The Court finds that the Defendants have standing to enforce the Consolidated Notes and Mortgages under New York Law, by virtue of the written assignment of the Individual Lender Mortgages, made by the individual note holders, under written assignments that included language unambiguously assigning the underlying debt. The Court need not separately decide the status of the Defendant's "gap financing" because the obligations covered by the Consolidated Notes and Mortgages are fully secured and enforceable. The Trustee's motion for summary judgment, declaring Defendants' Consolidated Notes and Mortgages a nullity, is

---

[13] The cases surrounding secondary market lenders, using MERS, are also arguably distinguishable from a policy standpoint—in light of the allegations of falsified mortgage documents and acts of robo-signing that came to light during the housing crisis. *See generally* Eric A Zacks & Dustin A. Zacks, *A Standing Question: Mortgages, Assignment, and Foreclosure*, 40 J. Corp. L. 705 (Spring 2015).

24

**DENIED**.  The Defendants' cross-motions for summary judgment, declaring their Consolidated Notes and Mortgages valid and enforceable, are **GRANTED**.  The Trustee's complaint in this adversary proceeding is **DISMISSED** as against all Defendants.

## VI.

### CONCLUSION

Because the Defendants' Consolidated Notes and Mortgages are based on valid assignments of the underlying Individual Lender Notes and Mortgages—and their liens are therefore secured—the Trustee's motion for summary judgment is **DENIED**.  Defendants' cross-motions for summary judgment declaring their Consolidated Notes and Mortgages valid and enforceable are **GRANTED**, under Rule 56 FRCP and Rule 7056 FRBP.  The Trustee's complaint in this adversary proceeding is **DISMISSED**.


IT IS SO ORDERED.

DATED: December 23, 2015                 _____/s/_____
        Rochester, New York           HON. PAUL R. WARREN
                                   United States Bankruptcy Judge

Case 2-15-02030-PRW   Doc 28   Filed 12/23/15   Entered 12/23/15 13:04:36   Desc Main
Document      Page 25 of 25